1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                        EASTERN DISTRICT OF CALIFORNIA

9

10   FRANK S. HINE,                                No. 2:23-cv-03009-TLN-CSK

11        Plaintiff,

12                                                 **ORDER**

13        v.

14   ARIVO ACCEPTANCE, LLC, et al.,

15        Defendants.

16

17

18        This matter is before the Court on Plaintiff Frank S. Hine's ("Plaintiff") Motion to

19   Remand.  (ECF No. 6.)  Defendants Arivo Acceptance, LLC, Garff Enterprises, Inc., and John

20   Garff (collectively, "Defendants") filed an opposition.  (ECF No. 9.)  Plaintiff filed a reply.  (ECF

21   No. 12.)  For the reasons set forth below, the Court GRANTS Plaintiff's motion.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                              1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises from Plaintiff's employment with Defendants.  In early 2021, Plaintiff was working for Capital One as a Regional Sales Manager for Capital One's auto finance business.  (ECF No. 1 at 12.)  Capital One required Plaintiff to sign a confidentiality agreement that prevented him from working for competitors of Capital One or using anything he learned while working at Capital One to compete with Capital One for three years.  (*Id.*)

Defendants contacted Plaintiff and offered him a job as the Chief Revenue Officer of Arivo Acceptance, LLC ("Arivo").  (*Id.*)  Defendants owned dozens of car dealerships and planned to use Arivo to fund car loans for their customers.  (*Id.*)  Defendants wanted Plaintiff to oversee and grow this business.  (*Id.*)  Plaintiff told Arivo's Chief Executive Officer, Robert Avery ("Avery"), that he could not leave Capital One until March 2022, and Avery agreed.  (*Id.*)

On behalf of Defendants, Avery promised in writing to pay Plaintiff a base salary of $300,000 per year for 36 months and to pay an additional monthly bonus of $6,125 if the monthly funding volume exceeded $35,000,000.  (*Id.*)  Avery promised to pay Plaintiff the remainder of the base salary and bonus if Arivo terminated Plaintiff involuntarily within the first 36 months of Plaintiff's employment.  (*Id.*)  On November 5, 2021, Avery and Plaintiff signed a written agreement capturing these terms.  (*Id.*)

In March 2022, Plaintiff resigned from his employment with Capital One and began working for Defendants.  (*Id.*)  Capital One sued Plaintiff alleging, among other things, that Plaintiff had violated the confidentiality/non-compete agreement.  (*Id.*)  Capital One also threatened to sue Arivo unless Arivo honored the confidentiality/non-compete agreement by terminating Plaintiff immediately.  (*Id.*)

On June 1, 2022, Avery and Arivo's Chief Risk Officer, Landon Starr, met with Plaintiff and terminated him "on the spot" to placate Capital One and avoid legal action.  (*Id.* at 13–14.)  Defendants did not pay Plaintiff as required by the contract between the parties.  (*Id.*)

---

[1]    The following facts are taken from the Complaint.  The Court does not reference the allegations in the operative First Amended Complaint because, as will be discussed, the Court finds the allegations in the original Complaint triggered the 30-day removal deadline, which is dispositive for the purposes of ruling on the instant motion.

1    Plaintiff brought the instant action against Defendants in Sacramento County Superior

2    Court on May 30, 2023.  (*Id.* at 10.)  The Complaint alleges various state law claims, including

3    claims for breach of contract, wrongful termination, and defamation.  (*Id.* at 14–26.)  Plaintiff

4    seeks general damages, including lost earnings and other employee benefits.  (*Id.* at 26.)  Plaintiff

5    also seeks punitive damages, interest for loss amounts related to earnings, attorney's fees, and

6    injunctive relief.  (*Id.* at 27.)  Plaintiff served Defendants in June 2023.  (*Id.* at 2.)  Defendants

7    removed the action to this Court based on diversity jurisdiction on December 26, 2023.  (*Id.* at 2.)

8    Plaintiff filed the instant motion to remand on January 9, 2024.  (ECF No. 5.)

9         **II.    STANDARD OF LAW**

10    A civil action brought in state court, over which the district court has original jurisdiction,

11    may be removed by the defendant to federal court in the judicial district and division in which the

12    state court action is pending.  28 U.S.C. § 1441(a).  A district court has original jurisdiction over

13    civil actions between citizens of different states in which the alleged damages exceed $75,000.

14    28 U.S.C. § 1332(a)(1).  The amount in controversy is determined by reference to the complaint

15    itself and includes the amount of damages in dispute, as well as attorney's fees, if authorized by

16    statute or contract.  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

17    Removal statutes are to be strictly construed against removal.  *Gaus v. Miles, Inc.*, 980

18    F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the

19    right of removal in the first instance.").  "The strong presumption against removal jurisdiction

20    means that the defendant always has the burden of establishing that removal is proper, and that

21    the court resolves all ambiguity in favor of remand to state court."  *Hunter v. Philip Morris USA*,

22    582 F.3d 1039, 1042 (9th Cir. 2009) (citation and internal quotation marks omitted).

23    28 U.S.C. § 1446 governs the procedure of removal.  *Roth v. CHA Hollywood Medical*

24    *Center, L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013).  Sections 1446(b)(1) and (b)(2) "place strict

25    [time] limits on a defendant who is put on notice of removability by a plaintiff."  *Id*. at 1125.

26    Under § 1446(b)(1), "if the case stated by the initial pleading is removable on its face," then the

27    defendant must remove within 30 days of receiving the initial pleading.  *Harris v. Bankers Life*

28    *and Cas. Co.*, 425 F.3d 689, 692, 694 (9th Cir. 2005).

3

1       ### III.   ANALYSIS

2          Plaintiff argues the Court should remand this action to state court because Defendants'

3   removal was untimely.  (ECF No. 6-1 at 6.)  Plaintiff contends it was clear from the face of the

4   Complaint that the amount in controversy exceeds $75,000, yet Defendants did not remove the

5   action until 172 days after being served with the Complaint.  (*Id.*)  Alternatively, Plaintiff argues

6   Defendants knew the amount in controversy exceeded $75,000 long before removal based on a

7   demand letter Plaintiff sent before filing the lawsuit, an email Plaintiff's counsel sent to

8   Defendants' counsel after the lawsuit was filed, and other information exchanged during

9   discovery.  (*Id.* at 7–8.)

10         In opposition, Defendants argue the amount in controversy could not be ascertained from

11  the face of the Complaint and they timely removed this action after it became apparent during the

12  discovery process that the amount in controversy exceeds $75,000.  (ECF No. 9 at 6–7.)

13  Defendants do not cite to a specific piece of information learned during the discovery process that

14  triggered their decision to remove the action.  Instead, they vaguely argue "[a]s discovery

15  progressed, Defendants realized that Plaintiff fabricated a fraudulent contract and was prosecuting

16  the case on the basis of this fraudulent document."  (*Id.*)

17         The thrust of Defendants' argument seems to be that Plaintiff's allegations about the

18  contract conflict with Defendants' version of the contract.  In Defendants' words, they "believed

19  there was no possibility of any liability."  (ECF No. 9 at 4, 7.)  Defendants fail to cite any

20  authority suggesting that their opinion about liability is at all relevant to the jurisdictional

21  analysis.  To the contrary, the Ninth Circuit has stated the amount in controversy represents "an

22  estimate of the total amount in dispute, not a prospective assessment of defendant's liability."

23  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

24         The Court agrees with Plaintiff that it is clear from the face of the Complaint that the

25  amount in controversy exceeds $75,000.  The Ninth Circuit has stated that "defendants need not

26  make extrapolations or engage in guesswork" to determine whether the amount in controversy is

27  satisfied, but defendants must "apply a reasonable amount of intelligence in ascertaining

28  removability."  *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013).

1    The Ninth Circuit further stated that "[m]ultiplying figures clearly stated in a complaint is an

2    aspect of that duty." *Id.*

3         In the instant case, Defendants easily could have multiplied figures clearly stated in the

4    Complaint to ascertain that the amount in controversy far exceeds $75,000, even considering the

5    breach of contract claim alone.  The Complaint alleges that under the parties' contract,

6    Defendants were required to pay the remainder of Plaintiff's base salary of $300,000 per year

7    (which equals $25,000 a month) for 36 months if Defendants terminated Plaintiff involuntarily

8    within the first 36 months of Plaintiff's employment.  (ECF No. 1 at 12.)  The Complaint alleges

9    Defendants involuntarily terminated Plaintiff in June 2022 — approximately three months after

10   Plaintiff started working for Defendants in March 2022 — and never paid Plaintiff's base salary

11   for the remaining months in the 36-month period.  (*Id.* at 12–14.)  Using basic math: $25,000 a

12   month x 33 remaining months = $825,000.[2]

13        Because it was clear from the face of the Complaint that the amount in controversy far

14   exceeds the $75,000 threshold, Defendants had thirty days from being served with the Complaint

15   to remove the action pursuant to 28 U.S.C. § 1446(b)(1).  Plaintiff served Defendants in June

16   2023, and Defendants did not remove the action until December 2023.  (ECF No. 1 at 1–2.)  As

17   such, Defendants' removal was untimely.

18        **IV.    CONCLUSION**

19        For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand and

20   REMANDS this action to the Sacramento County Superior Court.  (ECF No. 6.)  The Clerk of

21   Court is directed to close the case.

22   ///

23   ///

24   ///

25

26   [2]    Plaintiff argues the breach of contract claim alone would result in a minimum of
$725,000.  (ECF No. 6-1 at 2.)  Plaintiff cites the date the parties entered the alleged agreement in
27   November 2021 as the starting point for the 36-month period rather than the date Plaintiff started
working for Defendants in March 2022.  Applying either start date results in an amount well over
28   the $75,000 threshold.

IT IS SO ORDERED.

Date: June 26, 2024

_____
Troy L. Nunley
United States District Judge